### The STATE, ex rel. MARINGER,

v.

### CINCINNATI MILACRON, INC. et al.

[Cite as *State, ex rel. Maringer, v. Cincinnati Milacron, Inc.* (1990), 69 Ohio App.3d 672.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1226.

Decided Oct. 4, 1990.

*Butkovich, Schimpf, Schimpf & Ginocchio Co., L.P.A.,* and *James A. Whittaker,* for relator.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Scott A. Armour,* for respondent Industrial Commission of Ohio.

*Thompson, Hine & Flory, Edna Scheuer* and *Geraldine M. Johnson,* for respondent Cincinnati Milacron, Inc.

PEGGY BRYANT, Judge.

Relator, Albert Maringer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate an order denying relator's April 13, 1988 motion for change of election to receive compensation on the basis of impairment of earning capacity under former R.C. 4123.57(A), as well as his request for an increase in his percentage of permanent partial disability to fifty percent. Relator requested that the writ order the commission to enter an order finding (1) an increase in his percentage of permanent partial disability, (2) good cause for the change of election, and (3) compensation for the percentage increase based upon his impairment of earning capacity as provided by R.C. 4123.57(A).

Pursuant to Civ.R. 53 and Section 13, Loc.R. 11 of the Tenth Appellate District, this matter was referred to a referee, who issued a report, including findings of fact and conclusions of law and a recommendation. Both respondent Industrial Commission and respondent Cincinnati Milacron, Inc. ("Cincinnati Milacron"), have filed objections to the referee's report.

We adopt the referee's findings of fact, which indicate that on January 12, 1977, relator injured his right knee during the course of and arising out of his employment with Cincinnati Milacron. His claim was allowed for "chondromalacia, right patella and tear right medial meniscus." Particularly pertinent to the issues raised herein, on October 10, 1979, relator filed an application for a determination of percentage of permanent partial disability, ultimately determined to be fifteen percent; relator elected to receive compensation pursuant to former R.C. 4123.57(B).

Effective October 31, 1982, relator retired from his employment with Cincinnati Milacron. The retirement was designated as "Early, Non–Disability." Pursuant to the retirement plan, relator's election entitled him to receive monthly payments from Cincinnati Milacron's retirement plan for as long as he lives.

On April 6, 1984, relator sought an increase in his percentage of permanent partial disability, which ultimately was increased to forty percent, an increase of twenty-five percent over the prior award. During August 1984, relator was hospitalized and underwent surgery for a total replacement of his right knee. He was paid temporary total disability compensation from August 7, 1984 through April 23, 1986. Temporary total disability compensation was terminated on the basis of relator's election to retire on October 31, 1982.

Thereafter, on August 22, 1986, relator filed an application for permanent and total disability, which was denied on February 9, 1988. On April 13, 1988, relator sought to change his election from paragraph (B) to paragraph (A) under R.C. 4123.57, and to increase his percentage of permanent partial disability from forty to fifty percent. A district hearing officer found that. relator had not suffered an impairment of his earning capacity due to the allowed conditions of this claim, and denied his request for an increase in percentage of permanent partial disability. The Dayton Regional Board of Review ("the board") affirmed the district hearing officer's order; and on April 26, 1989, two staff hearing officers heard relator's appeal. Their order modified the order of the board to the following extent:

"The Staff Hearing Officers find that the claimant took a non-disability related voluntary retirement effective 10–31–82 thereby removing himself from his previous employment with the employer herein, as found by Industrial Commission order dated 4–23–86.

"The Staff Hearing Officers further find that the claimant is presently 69 years old and has completed a twelfth grade education. The Staff Hearing Officers find that considering the claimant's retirement and non-disability related factors, he does not have an impairment in earning capacity causally related to the industrial injury sustained 1–12–77.

"In all other respects, the order of the Dayton Regional Board is affirmed.

"The finding and order is based on the evidence in the file and/or evidence adduced at the hearing."

In his report, the referee found that the Industrial Commission ("the commission") had abused its discretion in finding relator's voluntary retirement to be a basis for denying him compensation under R.C. 4123.57(A). Moreover, the referee found that relator had presented some evidence of an impairment of relator's earning capacity. As a result, noting that the commission had failed to address whether good cause exists for relator to change his election from paragraph (B) to paragraph (A) under R.C. 4123.57, the referee recommended that the matter be returned to the commission to determine whether relator has shown good cause to change his election, and to determine whether relator has shown an impairment of earning capacity, considering at the same time the *Stephenson* factors [*State, ex rel. Stephenson, v. Indus. Comm.* (1987) 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946], as required under *State, ex rel. Arias, v. Indus. Comm.* (1990), 49 Ohio St.3d 76, 551 N.E.2d 135.

Respondents have filed objections to the referee's report, contending that the commission did not determine that relator's retirement alone was the basis for denying his request for compensation under R.C. 4123.57(A); that relator presented no evidence of actual impairment of earning capacity; that "some evidence" supported the commission decision that relator suffered no impairment of earning capacity; and that good cause does not exist for relator to change his election under R.C. 4123.57.

To first address the issue of voluntary retirement, the referee relied on *Arias, supra,* to find that voluntary retirement alone is not a basis for denying compensation under R.C. 4123.57(A); and as relator properly notes, neither respondent seeks to justify denial of compensation under R.C. 4123.-57(A) solely on the basis of relator's voluntary retirement. Indeed, in *State, ex rel. Arias, v. Indus. Comm.* (Feb. 28, 1989), Franklin App. No. 87AP–952, unreported, 1989 WL 18158, affirmed in *Arias, supra,* this court stated:

" * * * In making this determination, the commission relied upon our decision in *State, ex rel. Jones & Laughlin Steel Corp., v. Indus. Comm.* (1985), 29 Ohio App.3d 145 [29 OBR 162, 504 N.E.2d 451], stating that, for application of the voluntary retirement consideration, there is no difference between temporary total disability compensation and permanent partial disability compensation. This is a clear abuse of discretion. As the referee points out, this court has previously held that, with respect to an election to receive compensation pursuant to division (A) of R.C. 4123.57, voluntary retirement does not *per se* require a conclusion that a person's earning

capacity is no longer impaired. For example, if a claimant's early retirement stems from his difficulty in handling his work due to his injury, his retirement income may well be less than it would have been had he worked long enough to earn full retirement benefits. In addition, even a person who enjoys full retirement benefits and is retired is entitled to find other employment. * * * "

While this court's opinion in *Arias* explains why voluntary retirement alone is not a basis for denying compensation for impairment of earning capacity under R.C. 4123.57(A), neither this court's opinion nor the Supreme Court's opinion in *Arias* addresses those circumstances in which a claimant retires with full benefits and has no intention of seeking other employment thereafter. Indeed, respondents argue, and relator concedes, that if a claimant voluntarily retires under those circumstances, then that claimant has suffered no impairment of earning capacity causally related to the injury; rather, any loss of earning capacity is due to the claimant's intention to seek no other employment.

Applying that argument to the facts herein, the commission contends that, in order for relator to obtain benefits under R.C. 4123.57(A), the record must contain some evidence that relator sought or intended to seek other work, and that the record contains no such evidence. As a result, the commission asserts that relator's voluntary retirement plus his age and education suggest that any impairment relator suffers is due to factors other than his industrial injury.

We agree with the referee when he concludes at page ten of the report that " * * * *Arias* does not require the commission to determine whether the instant relator's retirement was causally connected to his work-related injury * * * "; nonetheless, we do so with a qualification. Specifically, voluntary retirement for reasons unrelated to an industrial injury does not preclude an award for impairment of earning capacity under R.C. 4123.57(A) for the reasons set forth in this court's opinion in *Arias* quoted above. However, as relator concedes, retirement coupled with evidence of no intent to seek other employment is relevant to a determination of impaired earning capacity under R.C. 4123.57(A). *State, ex rel. CPC Group, General Motors Corp., v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330.

In reviewing the stipulated evidence, we find no specific evidence that relator has sought other employment following his retirement from Cincinnati Milacron. However, the evidence indicates that, at the time relator applied for temporary total disability compensation in 1984, he stated that the date he last worked was August 6, 1984. Considering that he retired effective October 31,

1982, we find at least some indication of additional work beyond the date of his retirement.

Since the evidence in the file may suggest that relator continued to work following his retirement, the file contains some evidence suggesting an intent to work, and thus a premise for finding the industrial injury was causally related to any impairment of earning capacity, despite relator's "voluntary" retirement. Inasmuch as the commission's order refers only to a voluntary retirement in connection with two nonmedical disability factors, we are unable to determine on review whether the commission determined that relator's voluntary retirement coupled with the nonmedical disability factors suggested no intent to seek other employment, or whether the commission determined that the voluntary retirement, supported by the nonmedical disability factors, severed any causal relationship between the industrial injury and any impairment of earning capacity relator sustained. While the first conclusion would support the commission's determination, the second would not.

Accordingly, we remand this matter to the commission for consideration of relator's entitlement to compensation under R.C. 4123.57(A), since voluntary retirement coupled with a lack of intent to seek other employment, may support the lack of causal relationship as the commission found. To the foregoing extent, then, respondents' objections to the referee's report are sustained.

Apart from the commission's argument, respondent Cincinnati Milacron contends that *Arias* does not control the present case, as the claimant in *Arias* produced evidence of continuing work following his retirement. In *Arias*, the claimant proffered some evidence that his retirement may have been causally connected to his work injuries, and that he had continued to work following retirement.

While relator herein signed a form indicating that he was voluntarily retiring from Cincinnati Milacron on a nondisability basis, at least one of the doctor's reports contained in the stipulated evidence suggests to the contrary. In particular, the July 5, 1985 report of Errol J. Stern, M.D., states:

" * * * He states that his knee continued to bother him, and he finally retired (by force retirement) when he reached age 62 from Cincinnati Milacron in 1982. * * * "

The doctor's report does not indicate whether the retirement was due to the industrial injury, or some other factor; but the sentence quoted from Dr. Stern's report could be interpreted to suggest that the retirement may have been related to the continuing nature of his knee injury.

Given that some of the evidence in the record herein suggests that relator's retirement may have been related to his industrial injury, coupled with some evidence that he may have continued to work following his retirement, the facts herein are not as remote from those of *Arias* as respondents assert. To the contrary, depending on the interpretation placed on the evidence in the file, that evidence may support a causal relationship between the industrial injury and relator's asserted impairment of earning capacity. Hence we reject Cincinnati Milacron's argument.

Respondents continue by objecting to the referee's discussion of the evidence regarding impairment of earning capacity, contending that the evidence is insufficient to demonstrate any such impairment. For the reasons set forth in the referee's report, respondents' objections are overruled.

Respondents also contend that the record contains no evidence that relator has shown good cause to change his election from paragraph (B) to paragraph (A) under R.C. 4123.57. Again, for the reasons set forth in the referee's report, we overrule respondents' objections.

Finally, respondents contend that the record contains some evidence to support the commission's finding of no causal relationship between relator's industrial injury and any impairment of earning capacity. Specifically, respondents assert that relator's voluntary retirement coupled with his age and education support a finding that relator had no intention of seeking other employment, and that any impairment of earning capacity thus was not related to his industrial injury, but to his own decision to seek no further employment. However, as we discussed above, the commission order leaves us uncertain as to the basis for the commission's finding of no causal relationship. We overrule respondents' objections.

Accordingly, we adopt the referee's report with the modifications contained herein and issue a writ of mandamus ordering the commission to vacate its April 26, 1989 order, to conduct further proceedings on the merits of relator's April 13, 1988 motion consistent with this opinion, to determine whether relator has shown good cause for change of election, whether relator has demonstrated a causal relationship between the industrial injury and any alleged impairment of earning capacity, whether relator has shown an actual impairment of earning capacity based upon his request for an increase in the determination of his percentage of permanent partial disability, and to enter a new order which briefly explains the commission's consideration of the nondisability factors along with the medical evidence in reaching its determination of whether relator has sustained an increase in his percentage of permanent

partial disability which might entitle him, under the change of election, to compensation for impairment of earning capacity.

*Objections overruled in part and sustained in part; writ granted.*

McCORMAC and CURL, JJ., concur.

DEAN CURL, J., of the Morrow County Court of Common Pleas, sitting by assignment.