THE STATE EX REL. MATHESS *v.* WHEELING–
PITTSBURGH STEEL CORPORATION ET AL.

[Cite as *State ex rel. Mathess v. Wheeling–Pittsburgh
Steel Corp.* (1994), 68 Ohio St.3d 205.]

(No. 92–2575—Submitted November 9, 1993—Decided February 2, 1994.)

*Larrimer & Larrimer* and *Craig Aalyson,* for relator.

*Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr.,* and *Bradley K. Sinnott,* for respondent Wheeling–Pittsburgh Steel Corporation.

*Lee I. Fisher,* Attorney General, and *Merl H. Wayman,* Assistant Attorney General, for respondent Industrial Commission.

*Per Curiam.* Under former R.C. 4123.57, a claimant could elect how to receive partial disability compensation—as impaired earning capacity compensation under R.C. 4123.57(A) or permanent partial disability under R.C. 4123.57(B). For "good cause shown," however, a claimant could switch his election. Former R.C. 4123.57(A) (130 Ohio Laws 932–933). "Good cause," in turn, requires "unforeseen changed circumstances subsequent to the initial election *and* actual impaired earning capacity." (Emphasis added.) *State ex rel. Combs v. Goodyear Tire & Rubber Co.* (1992), 62 Ohio St.3d 378, 381, 582 N.E.2d 990, 992.

The first element, "unforeseen changed circumstances," is "deliberately flexible in order to accommodate the many possible situations that could merit a change of election." *State ex rel. Long v. Mihm* (1992), 64 Ohio St.3d 527, 529, 597 N.E.2d 134, 136. It, too, has two components, "with changed circumstances being

a condition precedent to consideration of foreseeability." *Id.* To date, three examples of "changed circumstances" sufficient to trigger a foreseeability inquiry have been identified: (1) recognition of additional conditions after election (*Combs* ), (2) significant worsening of claimant's condition (*State ex rel. Simpson v. Indus. Comm.* [1991], 62 Ohio St.3d 162, 580 N.E.2d 779), or (3) transformation of a non-work preventive injury into a work-prohibitive one. *Id.*

Claimant has unquestionably established "unforeseen changed circumstances." His six-fold increase in disability subsequent to election demonstrates a "significant worsening" of his condition. The post-election recognition of six additional conditions also satisfies the criterion established by *Combs.*

The presence of actual impaired earning capacity attributable to claimant's allowed conditions is less clear-cut. Claimant's assertion of impaired earning capacity appears to rest solely on claimant's present lack of employment and resultant lack of income. The commission district hearing officer denied a change of election citing a lack of *medical* evidence causally relating claimant's allowed conditions to his lack of wages.

This finding is an abuse of discretion. While such evidence was indeed absent when the district hearing officer made his decision, it was present before the staff hearing officers. Doctors Lechner and Ream both connected claimant's medical impairment to the "decrease in the ability of claimant to earn a living subsequent to his compensable injury as compared to his ability to earn a living prior to sustaining the disability." When the staff hearing officers affirmed the regional board's order without comment, however, they inherently adopted the district hearing officer's reasoning. See *State ex rel. DeMint v. Indus. Comm.* (1990), 49 Ohio St.3d 19, 550 N.E.2d 174. Given the cited medical reports, the commission, through its staff hearing officers, erred in denying impaired earning capacity benefits on this basis.

Our rejection of the commission's reasoning does not, however, compel a finding that claimant's earning capacity has been impaired, since two key issues have yet to be decided: (1) identification of claimant's preinjury earning capacity (*State ex rel. Eaton Corp. v. Indus. Comm.* [1993], 66 Ohio St.3d 180, 610 N.E.2d 992), and (2) the nature of claimant's retirement. A finding of voluntary retirement does not foreclose a finding of actual impaired earning capacity if claimant can establish that the injury hampers his or her ability to perform other post-retirement jobs for which claimant is otherwise qualified. *State ex rel. CPC Group v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330. Claimant must also show a desire to indeed pursue other employment opportunities. A claimant who voluntarily retires with no intention of ever working again cannot establish *actual* impaired earning capacity. *State ex rel. Pauley v. Indus. Comm.* (1990), 53 Ohio St.3d 263, 559 N.E.2d 1333.

Conversely, a finding of injury-induced retirement does not automatically establish impaired earning capacity. Impaired earning capacity depends on the extent of claimant's preinjury earning capacity. For example, an inability to do prior construction duties will have different effects on the life-long laborer and the medical student who worked construction over summer break. The latter's earning capacity may not be impacted at all while the former's may be destroyed. See, generally, *Eaton.* Further consideration of this issue is, therefore, necessary.

We thus find that the stated basis for the commission's denial of the motion for change of election is an abuse of discretion. Discussion in this case, however, can go no further absent additional consideration. Accordingly, we vacate the commission's order and issue a limited writ returning the cause to the commission for further inquiry into the issue of claimant's actual impaired earning capacity and a new order.

*Limited writ granted.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.