THE STATE EX REL. MCENDREE v. CONSOLIDATION COAL COMPANY ET AL.

[Cite as *State ex rel. McEndree v. Consolidation
Coal Co.* (1994), 68 Ohio St.3d 325.]

(No. 92–2515—Submitted November 9, 1993—Decided February 16, 1994.)

326

*Larrimer & Larrimer* and *Craig Aalyson,* for relator.

*Hanlon, Duff & Paleudis Co., L.P.A.,* and *John G. Paleudis,* for respondent Consolidation Coal Company.

*Lee I. Fisher,* Attorney General, and *Merl H. Wayman,* Assistant Attorney General, for respondent Industrial Commission.

*Per Curiam.* Former R.C. 4123.57 permitted a claimant to choose the manner in which to receive partial disability compensation—as impaired earning capacity compensation under R.C. 4123.57(A) or permanent partial disability benefits under R.C. 4123.57(B). We are once again asked to determine whether the commission abused its discretion in finding that claimant's requested election change was not supported by "good cause." For the reasons to follow, we deny the writ.

"Good cause" required "unforeseen changed circumstances subsequent to the initial election" and "actual impaired earning capacity." *State ex rel. Combs v. Goodyear Tire & Rubber Co.* (1992), 62 Ohio St.3d 378, 381, 582 N.E.2d 990, 992. Claimant can demonstrate neither actual impaired earning capacity nor the requisite changed circumstances.

As to his impaired earning capacity, claimant does not challenge the commission's conclusion that he retired for reasons unrelated to his injury. This voluntary retirement does not, in and of itself, foreclose a finding of actual impaired earning capacity. *State ex rel. CPC Group v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330. However, to maintain compensation eligibility, such a claimant must also demonstrate:

" * * * a desire to earn during the period in which an impairment has been alleged. Receipt of compensation for impaired earning capacity when that desire is absent is inconsistent with *Johnson's* [*State ex rel. Johnson v. Indus. Comm.* (1988), 40 Ohio St.3d 384, 533 N.E.2d 775] requirement that a claimant prove *actual* impaired earning capacity." (Emphasis *sic.*) *Id.* at 211–212, 559 N.E.2d at 1333.

Once a claimant meets that burden, he or she must still establish that efforts to secure post-retirement employment have been hampered by injury. The present claimant, however, falls short of even the threshold requirement. He has not alleged that he ever sought other post-retirement work, nor has he asserted any such intent or interest. Under similar facts, we found that an employee who expressed no desire to pursue post-departure work opportunities had no compensable earning impairment, stating:

" * * * appellee removed herself from the labor market for reasons unrelated to her injury, thereby reducing her 'earning capacity' to zero. Appellee's earning capacity therefore could not be impaired by her injury." *State ex rel. Pauley v. Indus. Comm.* (1990), 53 Ohio St.3d 263, 264–265, 559 N.E.2d 1333, 1335.

Conversely, even if claimant could demonstrate an injury-related earning capacity impairment, he could not persuasively assert that the impairment represented a change in circumstances. Claimant was not working when he initially made the election. He cannot, therefore, allege a post-election inability to work as a changed circumstance. As we held in *State ex rel. Simpson v. Indus. Comm.* (1991), 62 Ohio St.3d 162, 165, 580 N.E.2d 779, 782:

" * * * appellant was already prevented by his injury from working when he elected to receive R.C. 4123.57(B) compensation. Thus, the circumstances that appellant claims justify an election change were not only foreseeable, but were present when the initial election was made."

Claimant's reference to his subsequently allowed condition and resulting disability increase also does not represent changed circumstances sufficient to merit an election change. In *Combs, supra,* the post-election allowance of an additional condition was an integral part of our determination that the requisite changed circumstances existed. There, however, claimant's additionally allowed conditions created a sevenfold increase in disability and forced the claimant from his job. The present claimant's additional allowed condition has not had a comparable impact.

In the same vein, we decline to find that claimant's ten percent increase in disability, standing alone, represents a "significant worsening" of his condition so as to constitute a changed circumstance under *Combs.* See *State ex rel. Simpson v. Indus. Comm.* (1991), 62 Ohio St.3d 162, 580 N.E.2d 779. Claimant essentially asks us to view "significant worsening" in strictly numerical terms. We will not adopt such a narrow interpretation, finding that it disserves both claimants and employers. For example, to the resilient employee who somehow continues to work despite a high degree of disability, a slight five percent disability increase may be all that is needed to finally force this employee from his or her job. Conversely, a thirty percent increase may have no effect on a different claimant's ability to work.

In this case, without seeing a tangible consequence of claimant's numerically increased disability, we cannot characterize the worsening of his condition as "significant." For example, in *Combs,* claimant's jump in disability from five to thirty-five percent was accompanied by a contemporaneous inability to work. This helped to provide a more definable interpretation to numbers that, standing alone, might have been meaningless. In this case, claimant does not allege any change as a result of the ten percent disability increase, rendering the significance of the increase suspect.

For these reasons, the writ of mandamus is hereby denied.

*Writ denied.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., dissents.