[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 74.]

THE STATE EX REL. EVENFLO JUVENILE FURNITURE COMPANY, INC.,

APPELLEE, *v*. HINKLE, APPELLANT.

[Cite as *State ex rel. Evenflo Juv. Furniture Co. v. Hinkle*, 2001-Ohio-239.]

*Workers' compensation—Claimant who cannot perform sustained remunerative employment is not required to engage in a job search as a prerequisite to impaired earning capacity eligibility—Claimant's receipt of Social Security disability compensation does not foreclose receipt of impaired earning capacity benefits.*

(No. 98-126—Submitted November 14, 2000—Decided February 28, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD12-1643.

————————————

*Per Curiam.*

{¶ 1} Appellant-claimant Glenn Hinkle injured his back in 1981, while in the course of and arising from his employment with appellee, Evenflo Juvenile Furniture Company, Inc., and a workers' compensation claim was allowed. After initially missing time from work because of his injury, claimant eventually returned after surgery. In 1986, however, he reinjured his back and has not been able to work since.

{¶ 2} In 1992, Dr. Francis F. Paul confirmed that claimant had significant lifting restrictions and could never return to his job as an electrician. Two years later, Dr. Donald R. Eck concluded that claimant was permanently and totally disabled. A vocational assessment from Dr. Robert A. MacGuffie and Karen J. MacGuffie stated that claimant's nonmedical profile hindered his ability to do even light work.

{¶ 3} Claimant eventually asked the Industrial Commission of Ohio to determine his percentage of permanent partial disability. The commission assessed

a twenty-five percent permanent partial disability. Given the option of receiving his compensation as a lump sum permanent partial disability award under former R.C. 4123.57(B) or as biweekly impaired earning capacity ("IEC") benefits under former R.C. 4123.57(A), claimant chose the latter.

{¶ 4} Claimant's selection generated a hearing before a district hearing officer ("DHO"). There, the DHO granted IEC compensation:

"Claimant is awarded an impairment of earning capacity * * *.

"Pre-injury earning capacity is set at the average weekly wage of $755.65.

"Post-injury earning capacity is set at zero.

"Claimant has restrictions of no lifting in excess of fifteen pounds and no sitting or standing in one position for more than thirty minutes based on the reports of Doctors Paul, MacGuffie and Eck and [compensation is] to continue upon submission of [evidence] documenting wage impairment * * *.

"Claimant's age (67), education thru twelfth grade and work experience as a certified electrician only were taken into consideration in reaching this decision."

{¶ 5} That order was affirmed.

{¶ 6} Evenflo commenced a mandamus action in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in awarding IEC benefits. The court of appeals agreed, finding that without proof of a job search, claimant could not receive IEC.

{¶ 7} This cause is now before this court upon an appeal as of right.

{¶ 8} A single question is before us: Must a claimant who cannot perform sustained remunerative employment nevertheless engage in a job search as a prerequisite to IEC eligibility? For the reasons to follow, we answer in the negative.

{¶ 9} In advocating a job search requirement, Evenflo relies on the tenet that IEC cannot be paid absent a postinjury desire to work. *State ex rel. CPC Group v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330. Evenflo cites four cases in support of its position: *CPC; State ex rel. Pauley v. Indus. Comm.* (1990),

53 Ohio St.3d 263, 559 N.E.2d 1333; *State ex rel. McEndree v. Consolidation Coal Co.* (1994), 68 Ohio St.3d 325, 626 N.E.2d 674*;* and *State ex rel. Mathess v. Wheeling-Pittsburgh Steel Corp*. (1994), 68 Ohio St.3d 205, 625 N.E.2d 604. The last two are quickly distinguished because the claimants, unlike Hinkle, left their former positions of employment for reasons unrelated to their injury. Equally fatal to Evenflo's reliance is the fact that neither case said or implied that a job search was prerequisite to an affirmative finding of a postinjury desire to work. To the contrary, neither the term "job search" nor any like phrase appeared in *McEndree* or *Mathess*.

{¶ 10} *CPC* and *Pauley* established the principle that a postinjury desire to work must exist. Like *McEndree* and *Mathess*, neither case referred or alluded to a job search. Unlike those cases, they have been cited as authority in a recent decision that does suggest the necessity of such an endeavor.

{¶ 11} In *State ex rel. Matheney v. Cent. Ohio Coal Co*. (2000), 88 Ohio St.3d 50, 723 N.E.2d 570, claimant challenged an IEC denial that read:

" '[I]n light of the claimant's testimony at hearing that it is his belief that he cannot physically perform any sustained employment, claimant's testimony that he has *not sought other work* since his disability retirement in 1993 and the fact that the claimant is receiving Social Security Disability Benefits and disability retirement benefits, the [DHO] finds claimant has not demonstrated a desire to earn since he last worked.' " (Emphasis added.) *Id*. at 51, 723 N.E.2d at 571.

{¶ 12} We affirmed, citing *CPC* and *Pauley*. We stressed the necessity of a desire to earn and implied that the lack of a job search can indicate the absence of that desire. The question is whether *Matheney* additionally declared a job search to be mandatory.

{¶ 13} In contrast to *Matheney* is *State ex rel. Mt. Carmel Health v. Forte* (1992), 65 Ohio St.3d 335, 603 N.E.2d 1014. There, claimant's allowed conditions

permitted sedentary work. Because this capability existed, the employer argued that earning capacity had not been diminished.

{¶ 14} We disagreed, finding that the employer's position ignored the claimant's nonmedical disability factors, which, when combined with her medical condition, removed her from the labor market. We distinguished *CPC* and *Pauley*, stating that causal relationship in *Forte* was not an issue, since, unlike *Pauley* and *CPC*, there was no evidence that claimant's postinjury inability to earn was due to reasons unrelated to her disability. As we explained:

"There is no need to speculate on causal relationship in the case at bar. Again, medical evidence established that claimant could not return to her former job. Nonmedical evidence established that there were no jobs consistent with claimant's physical restrictions for which she is educationally or vocationally prepared. When claimant lost her ability to return to her old job due to the injury, she concomitantly lost her ability to earn wages due to injury." *Id*. at 338, 603 N.E.2d at 1016.

{¶ 15} At first glance, *Forte* and *Matheney* appear to take similarly situated claimants in opposite directions. Both seem to involve claimants who cannot perform sustained remunerative employment, and while the former did not require affirmative proof of a desire to earn, the latter found the lack thereof decisive. Closer examination, however, shows that the two cases are distinct.

{¶ 16} *Matheney* is conspicuous for its lack of medical evidence indicating that claimant could do no work—evidence that was the cornerstone of the court's decision in *Forte*. In *Matheney*, rather than medical evidence, claimant apparently offered only " 'his belief that he cannot physically perform any sustained employment,' " and his testimony that he was not looking for work as a result.

There was no medical evidence connecting his postinjury lack of employment to his industrial injury.[1]

{¶ 17} *Matheney* and *Forte* are not, therefore, irreconcilable, with the latter being more analogous to our case. Consequently, we find that Hinkle's lack of a job search is not fatal, and, from a practical perspective, this makes sense. It is pointless to force a claimant who cannot work to nevertheless go out and look for jobs in order to establish that if not for the injury, he or she would indeed be working. See *State ex. rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 212, 631 N.E.2d 138, 147.

{¶ 18} Evenflo alternatively argues that claimant's inability to perform sustained remunerative work bars IEC. It asserts that the declaration alone forecloses compensation and is reinforced by claimant's receipt of Social Security disability benefits. This proposition fails.

{¶ 19} The employer relies exclusively on an unreported appeals court decision, *State ex rel. Packard Elec. Co. v. Smith* (Aug. 8, 1989), Franklin App. No. 88AP-468, unreported, 1989 WL 88886. *Packard* involved a claimant who took a disability retirement and then later applied for IEC. That retirement was premised on a doctor's certification that claimant could do no work.

{¶ 20} In denying IEC compensation, the court first reasoned that because compensation under R.C. 4123.57(A) and permanent total disability ("PTD") compensation are both based on reduced earning capacity, a claimant cannot receive both at the same time. The same is true of PTD and disability retirement, *i.e.*, both are based on an inability to perform sustained remunerative work. Thus,

---

1. Matheney's receipt of disability retirement and Social Security disability benefits suggests an incapacity for some types of work. Disability retirement implies an inability to return to the former position of employment, while Social Security disability—which is decided under a different standard than permanent total disability—is broader. Even if their receipt, however, implied an inability to perform all work, it does not compel the commission to make the same finding. The claimant must still supply the requisite medical and/or vocational proof and allow the commission to make its own determination. Matheney apparently did not do so.

retirement benefits—like PTD compensation—cannot be paid concurrently with IEC benefits. Since the claimant was already getting retirement benefits when she applied for IEC, the appellate court reasoned that she was foreclosed from the latter.

{¶ 21} The flaw in *Packard* is its failure to recognize that disability retirement benefits *by statute* can be concurrently paid with PTD compensation. R.C. 4123.58(B)—both then and now—specifically approved concurrent payment of Social Security disability and PTD compensation. See 141 Ohio Laws, Part I, 774. Therefore, under *Packard'*s IEC/PTD analogy, IEC and Social Security disability benefits would be contemporaneously payable.

{¶ 22} We find, therefore, that claimant's receipt of Social Security disability compensation does not foreclose his receipt of IEC.

The judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

*Coolidge, Wall, Womsley & Lombard Co., L.P.A.,* and *John A. Cumming*, for appellee.

*McCrory & Clark Co., L.P.A., Elizabeth Warren Eddins* and *Christopher S. Clark*, for appellant.

———————————