DECISION
{¶ 1} Relator, Marty L. Horsley, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders denying him compensation for impairment of earning capacity ("IEC") under former R.C. 4123.57(A), and to enter an order granting IEC compensation.
{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate noted that relator was denied permanent total disability ("PTD") compensation by a commission order that determined relator was capable of performing many forms of sustained remunerative employment of a sedentary nature. Although the commission found him capable of sustained remunerative employment, relator did not seek employment allegedly because he was receiving social security disability compensation ("SSD"). However, the magistrate concluded that the commission is not required to find claimant unable to work simply because he is receiving SSD benefits. The magistrate determined that, under such circumstances, it was within the commission's discretion to find that relator's failure to seek employment indicated a lack of desire to earn that bars IEC compensation. Therefore, the magistrate held that the requested writ should be denied.
{¶ 3} Relator has filed objections to the magistrate's decision. Relator argues that the magistrate misinterpreted State ex rel. Evenflo Juv. Furniture Co. v. Hinkle (2001), 91 Ohio St.3d 74, wherein the court held that a claimant's receipt of SSD compensation does not foreclose the receipt of IEC. However, as the magistrate pointed out, Evenflo is distinguishable from the case at bar.
{¶ 4} In Evenflo, there was medical evidence before the commission establishing that claimant was permanently and totally disabled, and, therefore, incapable of performing sustained remunerative employment. In the case sub judice, the commission denied relator PTD compensation based upon an expert medical report and a vocational report which concluded that relator could perform many forms of sustained remunerative employment of a sedentary nature. Therefore, this case is very different from Evenflo.
{¶ 5} Moreover, the magistrate noted that the record contains no documents from the Social Security Administration showing the medical basis for relator's alleged receipt of SSD benefits. Therefore, there is not an evidentiary basis for a finding that relator is incapable of sustained remunerative employment. Furthermore, even if there had been evidence of relator's receipt of SSD benefits, the medical basis for SSD benefits may be much broader than the allowed conditions of the industrial claim.
{¶ 6} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
Writ of mandamus denied.
DESHLER and LAZARUS, JJ., concur.
 IN MANDAMUS
{¶ 7} In this original action, relator, Marty L. Horsley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying him compensation for impairment of earning capacity ("IEC") under former R.C. 4123.57(A), and to enter an order granting IEC compensation.
Findings of Fact:
{¶ 8} On January 4, 1986, relator sustained an industrial injury while employed as a "welder/fabricator" for respondent Southern Wood Piedmont Company, a state-fund employer. The industrial claim was initially allowed for "low back; herniated disc on the left at L5-S1."
{¶ 9} On February 27, 1996, relator filed an application for permanent total disability ("PTD") compensation. On the application, relator indicated that he had filed for Social Security Disability ("SSD") benefits but he was not as yet receiving SSD payments.
{¶ 10} On April 3, 1996, relator was examined by commission specialist H. Tom Reynolds, M.D., who found that the industrial injury permanently prevents relator from returning to his "previous level of employment," but it does not prevent "sedentary and light job duty levels."
{¶ 11} The commission requested an employability assessment report from Jerry A. Olsheski, Ph.D. On August 1, 1996, Dr. Olsheski issued a report in which he found that relator had "employment options" based upon acceptance of Dr. Reynolds' report. Dr. Olsheski found that relator could find employment as a "hand packer; assembler, small products; production inspector; bench assembler; cashier; surveillance system monitor; lens inspector."
{¶ 12} Following a September 19, 1996 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The order relied upon the medical report of Dr. Reynolds and Dr. Olsheski's vocational report. The commission, through its SHO, concluded that relator can return to many forms of sustained remunerative employment of a sedentary nature.
{¶ 13} On December 3, 1997, relator filed an application for the determination of his percentage of permanent partial disability. On February 20, 1998, the Ohio Bureau of Workers' Compensation mailed a tentative order finding that relator had 43 percent permanent partial disability.
{¶ 14} On March 31, 1998, relator moved for IEC compensation under former R.C. 4123.57(A).
{¶ 15} Following an April 22, 1998 hearing, a district hearing officer ("DHO") issued an order denying relator's motion for IEC compensation. The DHO's order states:
 Although it is evident from the file that the claimant is unable to return to his former position of employment, the DHO finds that the claimant did not sustain his burden of showing that there is an actual impairment of earning capacity. No evidence was submitted to establish the dollar amount of the claimant's post-injury earning capacity. In addition, the claim-ant testified that he is not and has not been seeking employment since 1995. Because an injury related impair-ment of earning capacity has not been demonstrated, the request is denied.
 This order is based on the report of Dr. Reynolds dated 4/16/96, the SHO order dated 9/19/96 and the claimant's testimony.
{¶ 16} Relator administratively appealed the DHO's order of April 22, 1998. Following a May 27, 1998 hearing, an SHO mailed, on June 18, 1998, an order affirming the DHO's order. The SHO's order states:
 The basic thrust of the claimant's argument was that the DHO erred, as a matter of law, in finding that the claimant's failure to seek employment since 1995 barred payment of impairment of earning capacity compensation. The claimant asserts that there is no legal authority that requires an individual to look for employment as a prerequisite to receiving compensation for impairment of earning capacity. The argument is rejected for the reasons so stated below.
 The Ohio Supreme Court in State ex CPC Group, General Motors Corp. v. Industrial Commission (1990), 53 Ohio St.3d 209 stated, in part,: "Consideration of post injury earning capacity assumes, at a minimum, a desire to earn during the period in which an impairment has been alleged. Receipt of compensation for impaired earning capacity when that desire is absent is inconsistent with Johnson's requirement that a claimant prove actual impaired earning capacity. CPC Group at 211-212."
 Since this decision, a number of appellate decisions have followed the CPC Group holding. For instance, State ex rel Maringer v. Cincinnati Milacron, Inc. (1990), 69 Ohio App.3d 672 held: "Indeed, the absence of a desire to earn during the period in which impaired earning capacity is alleged severs the causal relationship between the impairment of earning capacity caused by the industrial injury and the alleged loss of earnings."
* * *
 In light of the aforementioned case law and the claimant's failure to seek employment since 1995, the SHO finds that the claimant is not entitled to impairment of earning capacity compensation. Therefore, the order of the DHO, dated 4-22-98, is affirmed. [Emphasis sic.]
{¶ 17} Thereafter, on June 24, 1998, the SHO mailed a "Supplemental Order" stating:
 On June 10, 1998, the Supreme Court released a decision in State ex rel. Kirschner v. Industrial Commission (1998), 82 Ohio St.3d 90. This decision affirmed the basic principle that, in considering post injury earning capacity, a claimant must demonstrate a desire to earn income during the period in which impairment of earning capacity has been alleged. As stated in the order, mailed 6-18-98, the claimant has not actively sought employment since 1995 and is therefore not eligible for impairment of earning capacity compensation.
{¶ 18} On July 9, 1998, another SHO mailed an order refusing relator's administrative appeal from the SHO's orders of May 27, 1998.
{¶ 19} On July 22, 1998, relator moved for reconsideration and rehearing. In support, relator's counsel submitted a memorandum stating:
 In the case now at bar, claimant testified that he had not looked for employment since 1995 because he had been found permanently and totally disabled by the Social Security Administration as a result of the injuries caused by his work related accident on 1/4/86.
 The Staff Hearing Officer specifically cited cases indicating that a claimant must demonstrate a desire for employment to qualify for compensation for impairment of earning capacity.
 It is respectfully submitted there is a distinction between a claimant who does not desire employment and a claimant, such as Mr. Horsely, who cannot find employment due to physical impairments caused by his work related injury. As indicated, Mr. Horsley is receiving Social Security Disability Compensation largely due to the conditions which were recognized in this claim. Although the claimant has been denied permanent total disability compensation by the Ohio Industrial Commission, [he] clearly cannot return to work at this time in light of his receipt of Social Security Disability benefits.
 There is no case law of which this writer is aware which indicates that a claimant who is physically unable to work must look for work as a prerequisite to receiving compensa-tion for impairment of earning capacity pursuant to old statute 4123.57(A).
{¶ 20} The record fails to disclose whether the commission ever ruled upon relator's July 22, 1998 motion for reconsideration and rehearing.
{¶ 21} In November 1999, the commission granted an additional claim allowance for "thoracic sprain."
{¶ 22} On March 22, 2001, relator moved that the commission vacate its prior denial of IEC compensation based upon State ex rel. Evenflo Juv. Furniture Co. v. Hinkle (2001), 91 Ohio St.3d 74. The motion also cited to the commission the September 19, 1996 decision denying PTD compensation and the finding contained therein that the industrial injury limits relator to sedentary employment.
{¶ 23} Following a May 1, 2001 hearing, a DHO issued an order denying relator's March 22, 2001 motion. The DHO's order states:
 * * * Specifically, the request by the injured worker to overturn a prior denial of a request for a finding of Impairment of Earning Capacity, is denied. The DHO finds that the evidence in file does not support this request at this time.
 The DHO acknowledges that there have been changes in case law pertinent to job searches related to Impairment of Earning Capacity, since the initial denial by the DHO on 04/22/1998 and the SHO on 05/22/1998. However, the DHO finds that the holding in State ex rel. Evenflo Juvenile Furniture Company v. Hinkle (2001), 91 OhioSt.3d 74, pertains to an injured worker who cannot perform sustained remunerative employment and therefore is not required to engage in a job search as a prerequisite to Impairment of Earning Capacity. The DHO finds that this narrow holding does not apply to the instant claimant, as his application for permanent total disability was denied by an SHO on 09/19/1996. The DHO notes that while the injured worker cannot return to work at his former position of employment, he has been found to be capable of sedentary and light duty work.
 The DHO further finds that the injured worker has not provided an analysis of his pre-injury earning capacity vs. his post-injury earning capacity.
{¶ 24} Relator administratively appealed the DHO's order of May 1, 2001. Following an August 7, 2001 hearing, an SHO issued an order affirming the DHO's order. The SHO's order states:
 The SHO affirms the order of the DHO with additional discussion and reasoning.
 The injured worker has been determined to be a literate high school graduate with supervisory and clerical work ex-perience. He is now only forty-three years of age, his date of birth being 09/27/1958.
 The findings of fact in the 04/16/1996 SHO order are not only final, but fundamentally credible and unchanged. The injured worker is only older.
 The State ex rel. Evenflo v. Hinkle case (2001, 91 O.S.3d 74) cited by the injured worker must be read in the context of State ex rel. Matheny v. Central Coal (2000), 88 O.S.3d 50.
 The Industrial Commission and the BWC have no basis for establishing a basis for paying impairment of earning capacity when an injured worker with a basic education and employ-ment record demonstrate no effort to utilize them in the recent job market.
 The SHO concurs with the DHO's view that Evenflo, like State ex rel. Mt. Carmel v. Forte (1992), 65 O.S.3d 335, is limited to the gravely injured and poorest vocational prospects. Today's injured worker is neither.
{¶ 25} On September 29, 2001, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 7, 2001.
{¶ 26} On January 7, 2002, relator, Marty L. Horsley, filed this mandamus action. Conclusions of Law:
{¶ 27} Based on Evenflo and his alleged receipt of SSD benefits, relator contends that the commission cannot equate his failure to seek employment with a lack of desire to earn and, on that basis, deny him IEC compensation. The magistrate disagrees. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
{¶ 28} Former R.C. 4123.57 offered two types of compensation: (1) based upon the percentage of permanent partial disability under subsection (B) payable as a lump sum, or (2) for impairment of earning capacity payable weekly. When the commission finds a percentage of permanent partial disability, the claimant must elect one of the two forms of compensation.
{¶ 29} It is well settled that IEC compensation cannot be paid absent a postinjury desire to work. State ex rel. CPC Group v. Indus. Comm. (1990), 53 Ohio St.3d 209; State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263.
{¶ 30} A lack of a job search can indicate the absence of a desire to earn where the IEC claimant remains unemployed yet able to work. State ex rel. Backus v. Indus. Comm. (2001), 91 Ohio St.3d 251. However, where the IEC claimant is unable to work, lack of a job search is not fatal to showing IEC. As the court stated in Evenflo, supra, at 77:
 * * * It is pointless to force a claimant who cannot work to nevertheless go out and look for jobs in order to establish that if not for the injury, he or she would indeed be working. * * *
{¶ 31} Moreover, the Evenflo court made it clear that a claimant's inability to perform sustained remunerative employment does not bar IEC compensation. While PTD and IEC compensation cannot be paid concurrently because both types of compensation are for impaired earning capacity, a claimant's inability to perform any sustained remunerative employment does not bar IEC compensation even though the claimant is theoretically eligible for PTD compensation. Evenflo, supra; State ex rel. Coulter v. Indus. Comm. (2001), 91 Ohio St.3d 254.
{¶ 32} In Evenflo, the claimant, Glen Hinkle, sustained an industrial injury to his back in 1981. After surgery he returned to work. However, in 1986, he reinjured his back and did not return to work. In 1992, Dr. Paul confirmed that Hinkle could never return to his job as an electrician. Two years later, Dr. Eck concluded that Hinkle was permanently totally disabled. A vocational assessment from Dr. MacGuffie stated that Hinkle's nonmedical profile hindered his ability to do even light work.
{¶ 33} Thereafter, in Evenflo, the commission granted Hinkle IEC compensation. Evenflo filed a mandamus action alleging that the commission abused its discretion in awarding IEC compensation. This court agreed, finding that without proof of a job search, Hinkle could not receive IEC compensation. On appeal to the Ohio Supreme Court, this court's decision was reversed.
{¶ 34} The Evenflo court stated that there was a single question before it: "Must a claimant who cannot perform sustained remunerative employment nevertheless engage in a job search as a prerequisite to IEC eligibility?" Id. at 75.
{¶ 35} The Evenflo court answered the above question in the negative. In so doing, it carefully explained how previous case law is consistent with its answer to the question. The Evenflo court did not overrule prior case law.
{¶ 36} The Evenflo court distinguished State ex rel. Matheney v. Cent. Ohio Coal Co. (2000), 88 Ohio St.3d 50. In a footnote, the Evenflo court further explained Matheney. That footnote is pertinent here:
 Matheney's receipt of disability retirement and Social Security disability benefits suggests an incapacity for some types of work. Disability retirement implies an inability to return to the former position of employment, while Social Security disability — which is decided under a different standard than permanent total disability — is broader. Even if their receipt, however, implied an inability to perform all work, it does not compel the commission to make the same finding.
 The claimant must still supply the requisite medical and/or vocational proof and allow the commission to make its own determination. Matheney apparently did not do so. [Id. at 76-77.]
{¶ 37} Unlike the instant case, in Evenflo, Hinkle had not been denied PTD compensation. In fact, in awarding IEC compensation to Hinkle, the commission relied upon the reports of Drs. Paul, MacGuffie and Eck, indicating that Hinkle was PTD.
{¶ 38} Here, relator alleges that he "has been found permanently and totally disabled by the Social Security Administration, and was receiving Social Security Disability benefits at all times relevant herein." He then posits that, under Evenflo, he is not obligated to look for work as a prerequisite to receiving IEC compensation. Relator's argument is seriously flawed.
{¶ 39} To begin, the record contains no documents from the Social Security Administration showing the medical basis for relator's alleged receipt of SSD benefits. All we have here is the assertion of relator's counsel in a memorandum filed in support of a July 22, 1998 motion for reconsideration that relator is receiving SSD benefits "largely due to the conditions which were recognized in this claim." The mere assertion of counsel is not evidence upon which the commission can rely.
{¶ 40} Notwithstanding the evidentiary problems facing relator in this action, the Evenflo court makes it clear that the commission is not required find a claimant unable to work because he is receiving SSD benefits. The medical basis for SSD benefits may be much broader than the allowed conditions of the industrial claim.
{¶ 41} In any event, unlike claimant Hinkle in Evenflo, here, relator was denied PTD compensation by a commission order that found relator capable of performing "many forms of sustained remunerative employment of a sedentary nature." Notwithstanding that the commission found him capable of sustained remunerative employment, relator did not seek employment. Under such circumstances, it was within the commission's discretion to find that the failure to seek employment indicates a lack of a desire to earn that bars IEC compensation. Backus, supra.
{¶ 42} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.