DECISION
{¶ 1} Relator, Arthur Sharp, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion to change his election from former R.C. 4123.57(B), permanent partial disability compensation, to former R.C. 4123.57(A), impairment of earning capacity ("IEC") compensation and to enter an order granting him IEC compensation.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate essentially concluded that the commission did not abuse its discretion in denying IEC compensation. The magistrate recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision, and this matter is now before this court for a full, independent review.
 {¶ 3} By his objections, relator seems to argue that the magistrate's decision, which determined that the commission's finding that relator failed to show a "sufficient desire to earn" is supported by some evidence upon which the commission relied, is erroneous on the basis that the staff hearing officer ("SHO") did not address the issue of whether relator had shown a sufficient desire to earn. We find this argument to be unpersuasive. The district hearing officer ("DHO") denied IEC compensation on the sole basis that relator had failed to show a sufficient desire to earn during the period for which IEC compensation was sought. As correctly noted by the magistrate, the SHO affirmed the DHO's decision "with additional reasoning." The SHO provided an additional basis for denying the IEC compensation, specifically determining that relator failed to establish the existence of a change of circumstances to warrant a change of election under former R.C. 4123.57. Therefore, the commission essentially denied IEC compensation on two independent bases.
 {¶ 4} In his memorandum in support of his objections, relator also seems to contend that the magistrate erred in not finding that he had established an actual IEC, and that the magistrate erred in not addressing his argument that unforeseen changed circumstances existed. The issue of whether relator established an actual IEC was adequately and succinctly addressed by the magistrate. The magistrate properly determined that the commission's finding relating to whether relator established an actual IEC was supported by some evidence. Furthermore, the magistrate correctly reasoned that because the commission's finding as to that issue was supported by some evidence, it was unnecessary to address the additional reasoning set forth in the SHO's order.
 {¶ 5} Upon our thorough review of the record, we find that the magistrate properly discerned the pertinent facts and applied the relevant law to those facts. Therefore, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Sadler and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Arthur Sharp, : :
Relator, : :
v. : No. 04AP-1376 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Pharmacia, Inc., : :
Respondents. : :
 MAGISTRATE'S DECISION Rendered on July 22, 2005 Pencheff Fraley Co., LPA, Joseph A. Fraley and Amanda B.Brown, for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action, relator, Arthur Sharp, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion to change his election from former R.C. 4123.57(B), permanent partial disability compensation, to former R.C.4123.57(A), impairment of earning capacity ("IEC") compensation and to enter an order granting him IEC compensation.
Findings of Fact:
 {¶ 7} 1. On October 21, 1984, relator sustained an industrial injury while employed as a warehouse laborer for respondent Pharmacia, Inc. The industrial claim was initially allowed for: "lumbosacral strain; degenerative disc disease at L5-S1 and L4-5; herniated nucleus pulposus at L5-S1," and was assigned claim number 84-48167.
 {¶ 8} 2. On February 18, 2003, relator moved for the recognition of additional claim allowances. Following a May 1, 2003 hearing before a district hearing officer ("DHO"), the DHO issued an order additionally allowing the claim for: "left radiculopathy, foraminal stenosis L5-S1[,] lumbar spondylosis."
 {¶ 9} 3. Apparently, the DHO order of May 1, 2003 was not administratively appealed.
 {¶ 10} 4. In May, 2004, relator moved to change his election and to receive IEC compensation under former R.C. 4123.57(A). In support, relator submitted a report dated March 26, 2004, from Benedicta Udeagbala, D.O., and a report dated May 10, 2004, from Samuel H. Osipow, Ph.D., a vocational expert.
 {¶ 11} 5. In his March 26, 2004 report, Dr. Udeagbala opined that relator was permanently restricted from lifting greater than ten pounds. Repetitive twisting, bending, stooping and crawling was also foreclosed. Dr. Udeagbala indicated that relator can sit for a total of three hours during an eight hour day and can stand and walk for four hours.
 {¶ 12} 6. Dr. Osipow's report states:
You have asked for my vocational evaluation to determine what, if any, impairment in earning capacity Mr. Sharp has experienced in connection with his allowed claim for "lumbosacral strain, degenerative disc disease at L5-S1; left radiculopathy, foraminal stenosis at L5-S1, lumbar spondylosis.
The background information you sent indicates that the claimant was born on 7-13-56 and is now 47 years old. He graduated high school. His relevant work history is that of a warehouse worker.
You sent me a residual functional capacity assessment by Bendedicta Udeagbala, DO, dated 3-26-04, which indicates that the claimant can sit for 3 hours, stand and walk for 4 hours each, that he can occasionally bend, squat, crawl, climb, and reach, that he can lift up to 5 pounds continuously, 6 to 10 pounds frequently, and 11 to 20 pounds occasionally, and can carry similar amounts. He is capable of simple grasping, pushing and pulling arm controls, and fine manipulation. He can use his right foot for operative leg controls repetitively but not his left leg.
The above residual functional capacity is a limited range of sedentary exertion. Mr. Sharp's work as a warehouse worker was at least at medium level. He has no transferable skills. Thus, he would be limited to re-entry to the workplace at the unskilled sedentary level. The current minimum wage is $5.15 per hour or $206.00 per week, and work as a warehouse worker (listed as material handler II) currently would be paid at an average of $549.00 per week in the area around Columbus, OH, according to the latest data on the Salary Wizard of Salary.com.
This results in an impairment in earning capacity of $343.00 per week.
 {¶ 13} 7. Following a July 1, 2004 hearing, a DHO issued an order denying relator's motion for a change of election. The DHO order states:
* * * This request is denied as there is insufficient evidence of an actual impaired earning capacity. According to the physical restrictions in file from Dr. Udeagdala, the injured worker is capable of performing some work subject to certain physical restrictions. According to the vocational report from Samuel Osipow dated 05/10/2004, the injured worker's physical restrictions placed him in a range of sedentary exertion. Based on the above, the District Hearing Officer finds the injured worker is not precluded from performing any type of work due to the allowances in this claim.
According to the injured worker's testimony, he last worked in approximately the year 2000 or 2001. Also according to his testimony, he is signed up on a waiting list with Good Will and supposedly they contact him with any employment opportunities within his physical restrictions. However, there has been no employment since the years cited above. Additionally, there is no evidence in file of any other type of search for employment. Based on the above, the District Hearing Officer is not persuaded that being on an employment waiting list with one organization constitutes a sufficient desire to earn to demonstrate an actual impaired earning capacity. In other words, the injured worker is able to perform some work, but aside from being on a waiting list where his last employment was offered three to four years ago, no other search for employment has been undertaken. The District Hearing Officer finds this to be insufficient evidence of a desire to earn and as such there is insufficient evidence demonstrating an actual impaired earning capacity. Therefore, the injured worker's request for a change of election is denied.
 {¶ 14} 8. Relator administratively appealed the DHO order of July 1, 2004.
 {¶ 15} 9. Following an October 6, 2004 hearing, a staff hearing officer ("SHO") issued an order stating:
The order of the District Hearing Officer, from the hearing dated 07/01/2004, is affirmed with additional reasoning.
After reviewing all of the evidence on file, it is the order of the Staff Hearing Officer that the injured worker's motion, filed 03/20/2004, is denied.
It is the finding of the Staff Hearing Officer that the injured worker has failed to present sufficient evidence to establish that a change of circumstances exists to warrant a change of election. Because the injured worker has not met the first prong of the test in order to determine whether there is an impairment of earning, the Staff Hearing Officer will not address impairment.
The injured worker has failed to submit evidence to show that he has had a worsening of this condition since he first elected to receive permanent partial impairment instead of impairment of earning [sic]. Counsel stated that additional conditions have been added to the claim and thus the injured worker's condition has worsened. The injured worker has not presented any medical evidence to support this conclusion. It is quite possible that the conditions could have been there for years but was [sic] only granted at a later date. The symptoms could also have been there prior to the injured worker electing permanent partial instead of impairment of earning.
The injured worker did submit [a] physical capacities report from a doctor; however, there is no evidence that the injured [worker] did not have the same restrictions prior to the injured worker electing permanent partial instead of impairment of earning.
For the reasons noted the motion is denied to grant a change of election [sic].
 {¶ 16} 10. On November 4, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO order of October 6, 2004.
 {¶ 17} 11. On December 28, 2004, relator, Arthur Sharp, filed this mandamus action.
Conclusions of Law:
 {¶ 18} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} Former R.C. 4123.57 offered two types of compensation: (1) based upon the percentage of permanent partial disability under subsection (B) payable as a lump sum, or (2) for impairment of earning capacity payable weekly. When the commission finds a percentage of permanent partial disability, the claimant must elect one of the two forms of compensation. The statute allowed that the election can only be changed "for good cause shown."
 {¶ 20} In State ex rel. Hawkins v. Indus. Comm.,100 Ohio St.3d 21, 2003-Ohio-4765, at ¶ 7, 9-10, the court succinctly summarized the law applicable to this case:
"Good cause" is "`demonstrated when, at the time of making the first election, subsequently occurring circumstances were not foreseeable. If a person suffers what appears to be a minor injury, at the time of election, but the injury subsequently causes major problems to the relator's health and earning power, such a change of circumstances constitutes "good cause" within the meaning of R.C. 4123.57, for a change of election.'" Stateex rel. Combs v. Goodyear Tire Rubber Co. (1992),62 Ohio St.3d 378, 380 * * *, quoting State ex rel. Fellers v. Indus.Comm. (1983), 9 Ohio App.3d 247[.] * * *
* * *
"Good cause," however, also incorporates the presence of actual impaired earning capacity. Id. at 381[.] * * * It is long settled that actual IEC cannot be established absent a postinjury desire to work:
"R.C. 4123.57(A) requires a comparison of a claimant's pre- and post-injury earning capacity. Consideration of post-injury earning capacity assumes, at a minimum, a desire to earn during the period in which an impairment has been alleged. Receipt of compensation for impaired earning capacity when that desire is absent is inconsistent with [the] requirement that a claimant prove actual impaired earning capacity." (Emphasis sic.) Stateex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm. (1990),53 Ohio St.3d 209, 211-212 * * *; see, also, State ex rel. Pauleyv. Indus. Comm. (1990), 53 Ohio St.3d 263 * * *; State ex rel.McEndree v. Consolidation Coal Co. (1994), 68 Ohio St.3d 325 * * *;State ex rel. Mathess v. Wheeling-Pittsburgh Steel Corp. (1994), 68 Ohio St.3d 205[.] * * *
 {¶ 21} Here, the DHO denied IEC compensation based solely upon a finding that relator had failed to show a "sufficient desire to earn" during the period for which IEC compensation was sought. The DHO did not address relator's claim that unforeseeable circumstances subsequent to his election had occurred.
 {¶ 22} The SHO affirmed the DHO's decision "with additional reasoning." The SHO found that relator had failed to show that the industrial injury had actually worsened subsequent to his election. In effect, the SHO found that relator had failed to show unforeseeable circumstances subsequent to his election.
 {¶ 23} Because the commission's finding that relator failed to show a "sufficient desire to earn" is supported by some evidence upon which the commission relied, this court need not address the additional reasoning set forth in the SHO's order.
 {¶ 24} Again, the DHO order states:
* * * In other words, the injured worker is able to perform some work, but aside from being on a waiting list where his last employment was offered three to four years ago, no other search for employment has been undertaken. The District Hearing Officer finds this to be insufficient evidence of a desire to earn and as such there is insufficient evidence demonstrating an actual impaired earning capacity. Therefore, the injured worker's request for a change of election is denied.
 {¶ 25} According to relator in this action:
Relator further asserts that he has exhibited a desire to earn despite his impaired earning capacity. Mr. Sharp testified before the District Hearing Officer that he last worked in 2000 or 2001. Mr. Sharp further testified that he had included himself on an employment list with Good Will where he can be contacted with any employment opportunities within his physical restrictions. * * * Despite Mr. Sharp's testimony, the District Hearing Officer found that this testimony was insufficient proof to show a desire to earn. The District Hearing Officer in his decision failed to address in any manner, the second prong of "good cause," as to whether there was an unforeseen changed circumstance subsequent to an initial election. * * *
(Relator's brief at 5.)
 {¶ 26} Relator seems to suggest that his testimony must be viewed as evidence of a desire to earn. This suggestion is obviously incorrect. It is the commission that weighs the evidence. The DHO's conclusion that relator's testimony failed to show a desire to earn was a reasonable inference to be drawn from such testimony.
 {¶ 27} Relator also seems to suggest that the DHO's finding regarding relator's testimony is somehow negated by the DHO's failure to address the question of unforeseen circumstances. This suggestion is also incorrect. Obviously, if relator has failed to show a desire to earn, he cannot obtain IEC compensation even if he can show unforeseen circumstances.
 {¶ 28} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.