[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 254.]

THE STATE EX REL. COULTER, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO, APPELLEE, ET AL.

[Cite as *State ex rel. Coulter v. Indus. Comm*., 2001-Ohio-33.]

*Workers' compensation—Permanent partial disability compensation—Claimant's change-of-election motion denied by Industrial Commission—Court of appeals' judgment denying writ of mandamus reversed and commission ordered to consider further claimant's motion and issue an amended order.*

(No. 99-1510—Submitted January 30, 2001—Decided April 11, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-732.

_____

*Per Curiam.*

{¶ 1} Appellant-claimant Roberta C. Coulter suffered two industrial low back injuries in the early 1980s.  Two laminectomies followed.  After her second surgery in 1982, Dr. Richard M. Ward concluded that claimant could not return to her former job as a nurse's aide.

{¶ 2} Claimant worked a series of jobs thereafter with periods of work interspersed with allegedly injury-induced absences.  In 1985, claimant moved appellee Industrial Commission of Ohio for determination of a percentage of permanent partial disability ("PPD") under former R.C. 4123.57.  The commission assessed a ten percent PPD.  Given the choice of receiving compensation as a lump sum PPD award under former R.C. 4123.57(B) or as weekly compensation for impaired earning capacity ("IEC") pursuant to former 4123.57(A), claimant selected the first option.

SUPREME COURT OF OHIO

**{¶ 3}** Claimant's work continued to be only intermittent until late 1990, and her income reflected it. Claimant has apparently not worked since November 29, 1990, allegedly due to injury.

**{¶ 4}** In 1997, claimant sought to change her election of compensation. A district hearing officer denied the change for lack of good cause. A staff hearing officer ("SHO"), in a confusing order, reversed the finding of no good cause, but sustained the denial of compensation nonetheless after concluding that claimant did not have an actual IEC:

"Pursuant to [*State ex rel.*] *Simpson v. Indus. Comm*. (1991), 62 O.S.3d 162 [580 N.E.2d 779], the transformation of a nonwork-preventive injury into a work-prohibitive one is changed circumstances sufficient to be considered unforeseen changed circumstances. Per the 12/01/82 report of Dr. Ward the claimant was initially able to return to her former job after this injury and resulting surgery. After a second injury in 1981 she was unable to return to her former job but was able to do lighter work. The wage records from the Social Security Administration show the claimant was able to return to lighter work and did so up until sometime in 1990. However, these records reflect no wages since 1990. The 05/26/95 report of Dr. Verma notes the claimant was not working at that time. The 07/25/97 re-employment Advisor report of Betty Sparkman indicates the claimant has not worked in at least 2 years. These records support the claimant's contention that she has not worked since 1990. The report of Ms. Sparkman goes on to indicate [that an] active job search with a goal of return[ing] to work does not appear to be a viable option at this time. The claimant made her election on 09/18/85 at which time she was working. After that time her condition, due to this claim, deteriorated to the point [that] she could not return to the lighter work jobs she was doing. This is shown by the report of Ms. Sparkman as well as the 10/20/97 report of Mr. Burr which notes [that] the claimant's 06/05/90 medical disability release was due to her

chronic low back condition. Therefore, the claimant has shown the necessary transformation and/or unforeseen circumstances.

"However, per [*State ex rel.*] *McEndree v. Consolidation Coal Co.* (1994), 68 O.S.3d 325 [626 N.E.2d 674], the claimant must show actual impaired earning capacity, which includes proof of a desire to earn over the period for which impaired earning capacity is alleged.

"If the claimant can not work at all she is not entitled to an award under 4123.57(A) as she would be alleging a permanent and total disability which is covered under statute section 4123.58. Section 4123.57 is entitled *partial* disability compensation not *total* disability compensation. Partial disability indicates there must be some ability to work. If there is some ability to work then there must also be shown a desire to work. In this case it is found the claimant has not proven his [*sic*] desire to work or earn. There is no evidence of any job search or any attempt to work since 1990. The claimant was not present to testify as to any search or attempts to work. The fact the claimant has been on social security disability since 1990 (per her counsel) also indicates a lack of desire to work. Therefore, the claimant has not proven an actual impairment of earning capacity and the C-86 is denied." (Emphasis *sic*.)

{¶ 5} Further appeal was refused. Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying her change of election. The court of appeals denied the writ, prompting claimant's appeal to this court as of right.

{¶ 6} Former R.C. 4123.57 offered two types of compensation: IEC benefits under subsection (A) and compensation based on the percentage of permanent partial disability under subsection (B). Once partial disability was assessed, a claimant chose one of the two forms of compensation. The statute allowed, however, that "for good cause shown," a claimant could change that election. 138 Ohio Laws, Part I, 1733.

**{¶ 7}** "Good cause" requires a showing of "(1) unforeseen changed circumstances subsequent to the initial election, and (2) actual impaired earning capacity." *State ex rel. Combs v. Goodyear Tire & Rubber Co.* (1992), 62 Ohio St.3d 378, 381, 582 N.E.2d 990, 992. Because the SHO found unforeseen changed circumstances, the only issue is the existence of actual IEC. On this question, the commission's order merits further consideration.

**{¶ 8}** A poorly written SHO order hampers review. Among the instances of ambiguity is that surrounding the extent of claimant's disability. While the order initially suggests an inability to do sustained remunerative work, its denial of IEC relies, in part, on the existence of a residual capacity for labor.

**{¶ 9}** The ambiguity, at first seems harmless, since the SHO seemingly covered all bases by offering two theories of denial, covering claimants who can and cannot work. Both theories, however, are flawed, which necessitates a clarification of claimant's extent of disability.

**{¶ 10}** The SHO initially declared that a claimant who cannot work cannot receive IEC, "as [she] would be alleging a permanent and total disability." This statement, however, incorrectly assumes that all claimants who cannot work have a *permanent* disability. It ignores the many workers whose complete inability to work is only temporary.

**{¶ 11}** The SHO's other stated basis for denial was claimant's lack of a desire to earn. This requirement was first discussed in *State ex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 211-212, 559 N.E.2d 1330, 1333:

"R.C. 4123.57(A) requires a comparison of claimant's pre- and post-injury earning capacity. Consideration of post-injury earning capacity assumes, at a minimum, a desire to earn during the period in which an impairment has been alleged. Receipt of compensation for impaired earning capacity when that desire is absent is inconsistent with *Johnson's* [*State ex rel. Johnson v. Indus. Comm.*

(1988), 40 Ohio St.3d 384, 533 N.E.2d 775] requirement that a claimant prove *actual* impaired earning capacity." (Emphasis *sic*.)

{¶ 12} In concluding that claimant had no desire to earn, the SHO cited claimant's lack of a job search and receipt of Social Security disability benefits. This is problematic because the order strongly implies that claimant is incapable of sustained remunerative employment, and, per *State ex rel. Evenflo Juvenile Furniture Co. v. Hinkle* (2001), 91 Ohio St.3d 74, 742 N.E.2d 124, a job search is not required of claimants who cannot do sustained remunerative employment.

{¶ 13} Clarification of claimant's ability to work is, therefore, critical. If claimant cannot work, the commission's reliance on the lack of a job search and receipt of Social Security disability benefits is an abuse of discretion. If she is employable, then the commission's order may well be supported by some evidence.

{¶ 14} Two smaller issues can be quickly resolved. Claimant is indeed correct in contending that nonmedical disability factors must be considered in determining IEC. Claimant is also correct in asserting that her motion to change her election alleged an impaired earning capacity from 1983 forward, not 1990, as stated by the appellate court. There is, accordingly, no issue of waiver.

{¶ 15} The judgment of the court of appeals is reversed. We order the commission to further consider claimant's motion and issue an amended order.

*Judgment reversed*
*and limited writ granted*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Gloria P. Castrodale* and *James T. Sullivan,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Craigg E. Gould*, Assistant Attorney General, for appellee.