While the oral argument given by relator's counsel was persuasive, I can find no authority to support the adoption of the proposed reasoning. While there are a variety of ways to show a desire to earn, the Ohio Supreme Court has made clear that relator has this burden. State ex rel. CPC Group, General Motors Corp., v. Indus. Comm. (1990), 53 Ohio St.3d 209; State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263.
In this case, the commission was within its discretion to find that relator did not demonstrate the requisite desire to earn.
 APPENDIX A IN MANDAMUS
In this original action, relator, Doris J. Hawkins, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that it denies her compensation for impairment of earning capacity ("IEC") under former R.C. 4123.57(A) and to enter an amended order granting her IEC compensation.
Findings of Fact:
1. On July 25, 1973, relator sustained an industrial injury while employed as a press operator for respondent Campbell Soup Company, a state-fund employer. The industrial claim was initially allowed for "lumbosacral strain and lower thoracic strain" and assigned claim No. 73-37089. Relator was off work approximately two weeks after the injury while receiving temporary total disability compensation. She then returned to her press operator position.
2. On October 12, 1979, the commission increased relator's permanent partial disability award ten percent for a total of thirty percent. Relator received the ten percent award as a lump sum pursuant to her prior election under former R.C. 4123.57(B).
3. On February 5, 1992, relator underwent "depressive laminectomy L5 with decompression of L5 and S1 nerve roots bilaterally." She also underwent "posterolateral bilateral fusion L5-S1 with right posterior iliac crest bone graft." The surgery was performed by Nabil Ebraheim, M.D., whose operative report is found in the record.
4. On October 5, 1992 and on June 14, 1993, relator moved for the recognition of an additional claim allowance. The motion was initially denied by the Ohio Bureau of Workers' Compensation ("bureau") and relator administratively appealed.
5. Following a May 4, 1994 hearing, a district hearing officer ("DHO") additionally allowed the claim for "spondylolisthesis at L5/S1 and L5 radiculopathy" based upon medical reports from Dr. Ebraheim. Apparently, the DHO's order was not administratively appealed.
6. On February 2, 2000, relator moved to change her election and to receive IEC compensation beginning two years prior to the date of the filing of her motion. Relator's change of election was based upon her surgery and the grant of an additional claim allowance. In her motion, relator requested that her pre-injury earning capacity be set at $406.94 based upon her earnings during the year prior to her February 5, 1992 surgery. Relator also requested that "post-injury earning capacity be set at current minimum wage times 20 hours per week."
7. In support of her motion, relator submitted the February 5, 1992 operative report of Dr. Ebraheim, wage information from Campbell Soup Company for the year prior to her surgery, and relator's affidavit executed August 18, 1999, stating in part:
 * * * This is also to request that my post-injury earning capacity be set at the current minimum hourly rate of pay times 20 hours as I have been limited to part-time employment as a result of my industrial injuries. * * * I have received no wages for the above period of time (since February 5, 1992) as a result of my industrial injury and the surgery I underwent on February 5, 1992.
8. In support of her motion, relator submitted a report, dated September 29, 1999, from treating chiropractor, Sherman J. Bowen, Jr., DC, stating:
 It is my opinion that this injured worker should not and could not return to her former position as a laborer/press operator with Campbell Soup Company.
9. Dr. Bowen also completed form RH-27 captioned "Opinion of Physical Capacities." The form asks the doctor to indicate physical capacity by marking the appropriate box. Dr. Bowen indicated that, during an eight hour day, relator can sit for a total of two hours, stand for a total of two hours, and walk for a total of two hours. He also indicated that relator can "occasionally" lift and carry up to twenty pounds.
10. In further support of her motion, relator submitted a vocational evaluation, dated December 10, 1999, from Karen MacGuffie, a certified rehabilitation counselor, and Robert MacGuffie, Ph.D., a psychologist. The MacGuffie report states:
 Mrs. [Hawkins] is a 65-year-old woman who sustained a serious work-related injury in 1973. She continued to work with pain until 1992 when back surgery was performed and she was no longer able to maintain her job. Medical reports indicate that she cannot return to her past relevant work as a press Operator, and at best, she is limited to sedentary work on a part time basis.
 There are jobs in the national economy that Mrs. Hawkins could perform with these restrictions. It should be noted that these are all sedentary entry-level unskilled jobs that offer part time work. * * *
 If Mrs. Hawkins were to obtain any of the aforementioned occupations, her earnings would be much less than what she formerly obtained as a Press Operator for Campbell Soup Company. The above jobs all offer minimum wages and because they are part time they offer no insurance or other benefits that might be helpful to an employee.
 Since the work the claimant performed was unskilled she has no transferable skills that would help her obtain a better-paying job in the national economy.
11. Following a March 14, 2000 hearing, a DHO issued an order denying IEC compensation. Relator administratively appealed.
12. Following a June 15, 2000 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 03/14/2000, is MODIFIED to the following extent.
 Therefore, it is the order of the Staff Hearing Officer that the C-86 Motion, filed 02/02/2000, is GRANTED to the extent of this order.
 Initially, the Staff Hearing Officer notes that the claimant has met her burden of proving "good cause" to change her election from former Paragraph A of R.C. 4123.57 to former Paragraph B of R.C. 4123.57. In this regard, the Staff Hearing Officer notes that the claim was additionally allowed for the condition of "spondylolisthesis at L5-S1 and L5 radiculopathy" by a District Hearing Officer on 05/04/1994.
 In denying the claimant's request for impairment of earning capacity compensation under former Paragraph A of R.C. 4123.57, the Staff Hearing Officer finds that the claimant failed to produce sufficiently persuasive evidence of a "desire to earn." In determining whether the claimant had met her burden of proving a "desire to earn," the Staff Hearing Officer must examine evidence that the claimant sought or intended to seek employment during the period in which she is claiming that her earning capacity was impaired. See _State ex rel. Columbus Southern Power Co. v. (September 8, 1994), Franklin App. No. 93APD09-1303, page 4 (memorandum decision). Recently, the Tenth Appellate District held that "the absence in the record on relator's effort to seek employment effectively causes there to be a lack of evidence to support a claim of impairment of earning capacity compensation." State ex rel._Coulter v. Indus. Comm. (June 29, 1999), Franklin App. No. 98AP-732, unreported (memorandum decision).
 Under the facts of the instant claim, the Staff Hearing Officer finds that the claimant has demonstrated no "desire to earn" during time in which impairment of earning capacity compensation is being sought (from 02/02/1998 through today's date of hearing). Claimant has worked in no capacity since the original 1992 injury and, since October of 1999, the claimant began receiving Social Security retirement benefits. The Staff Hearing Officer has also reviewed the claim file to determine whether there is evidence of a job search. No such evidence has been submitted and the claimant has indicated that she has neither worked nor sought work from 02/02/1998 through today's date of hearing. As such, the Staff Hearing Officer does not find that the claimant is entitled to an award of impairment of earning capacity compensation.
 The Staff Hearing Officer can find no authority for claimant's argument that the desire to earn is not applicable when the injury precludes a return to former position. There appears to be some capacity to earn as evidenced by the vocational report of Doctor McGuffie.
13. On July 28, 2000, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 15, 2000.
14. On November 26, 2000, relator, Doris J. Hawkins, filed this mandamus action.
Conclusions of Law:
The commission, through its SHO, denied IEC compensation on grounds that relator had failed to show a desire to earn during the period that IEC compensation was requested, i.e., beginning February 2, 1998. Because the commission's stated basis for denial of IEC compensation is supported by law and by some evidence upon which the commission relied, it is the magistrate's decision that this court deny relator's request for a writ of mandamus as more fully explained below.
Former R.C. 4123.57 offered two types of compensation: (1) based upon the percentage of permanent partial disability under subsection (B) payable as a lump sum, or (2) for impairment of earning capacity payable weekly. When the commission finds a percentage of permanent partial disability, the claimant must elect one of the two forms of compensation. The statute allowed that the election can only be changed "for good cause shown."
"Good cause" requires a showing of (1) unforeseen changed circumstances subsequent to the initial election, and (2) actual impaired earning capacity. State ex rel. Combs v. Goodyear Tire Rubber Co. (1992),62 Ohio St.3d 378, 381.
In the instant case, the commission found unforeseen changed circumstances but denied IEC compensation because it could not find actual impaired earning capacity. Thus, it is the commission's determination of an absence of impaired earning capacity that is at issue in this action.
It is well settled that IEC compensation cannot be paid absent a post-injury desire to work. State ex rel. CPC Group v. Indus. Comm. (1990), 53 Ohio St.3d 209; State ex rel. Pauley v. Indus. Comm. (1990),53 Ohio St.3d 263.
A lack of a job search can indicate the absence of a desire to earn where the IEC claimant remains unemployed yet able to work. State ex rel. Backus v. Indus. Comm. (2001), 91 Ohio St.3d 251. However, if the IEC claimant is unable to work, lack of a job search is not fatal to showing IEC. State ex rel. Coulter v. Indus. Comm. (2001),91 Ohio St.3d 254. As the court stated in State ex rel. Evenflo Juv. Furniture Co. v. Hinkle (2001), 91 Ohio St.3d 74, 77:
 * * * It is pointless to force a claimant who cannot work to nevertheless go out and look for jobs in order to establish that if not for the injury, he or she would indeed be working. * * *
It is undisputed that relator has not worked since her surgery in February 1992, and she has not sought employment since that time.
In her affidavit executed August 19, 1999, relator concedes that, during the relevant time period, she had a post-injury earning capacity of twenty hours per week times the current minimum wage. In the MacGuffie vocational report relator submitted, it was opined that she had the capacity for "sedentary work on a part time basis."
Notwithstanding that it was her position at the commission that she possessed a post-injury earning capacity for part time employment at the current minimum wage, relator admits that she never sought the employment she was admittedly capable of performing.
There is indeed evidence, largely undisputed, that after the 1992 industrially related surgery, relator's earning capacity was reduced to part time employment at current minimum wage levels. Under the current case law, relator cannot be expected to search for the full time work that she is no longer capable of performing. However, relator concedes that she never sought employment at the part time level that she was admittedly capable of performing.
Under the current case law, relator's failure to search for the employment she was capable of performing can be viewed as a lack of desire to earn that bars IEC compensation.
Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.